UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

ANTHONY NEAL,                          )
                                       )
            Plaintiff,                 )
                                       )
    v.                                 )        CIVIL NO.  1:12cv343
                                       )
TIM PAULEY, *et al.*,                  )
                                       )
            Defendants.                )

OPINION AND ORDER

This matter is before the court on a motion for summary judgment filed by the

defendants, Officer Tim Pauley, Officer Joel Thomas and the City of Marion, on February 14,

2014.  The plaintiff, Anthony Neal ("Neal"), filed his response on March 13, 2014, to which the

defendants replied on March 27, 2014.

For the following reasons, the motion will be granted.

Discussion

Neal has sued the defendants pursuant to 42 U.S.C. Section 1983, alleging that his rights

under the Fourth Amendment were violated due to a warrantless entry into his residence and his

arrest, which he alleges was without probable cause.

The defendants assert the following facts in support of their motion.  On September 20,

2010,  Neal was living in a rented house at 817 South Geneva Street in Marion, Indiana.  He

lived there with his girlfriend Maricela Guerrero and her four children. During the afternoon of

September 10th, Neal and Maricela went to the funeral of a friend. After the visit to the

gravesite, Neal went home,  changed clothes and went to the gathering of young people who

knew the decedent. The gathering was at the home of Neal's former girlfriend who had borne

two of Neal's children. Under the circumstances, Maricela did not go to the gathering.

While Neal was at the gathering, Maricela attempted to telephone him several times, but he did not pick up. Finally, Maricela showed up at the gathering to confront Neal for not answering his telephone and an argument followed. Neal did not want to create a scene, so he left the gathering and returned home. He arrived at home at approximately 10 p.m.

Maricela arrived home a short time later. She was upset because she had gotten into a fight with a girl who had been speaking with Neal at the gathering. Maricela had a black eye as the result of the fight. Maricela wanted to go back and finish the fight, but Neal did not want her to do so. A loud argument followed with Maricela yelling at Neal and Neal yelling at Maricela. At one point, Maricela got Neal's keys and the argument continued outside the residence. Neal and Maricela continued to yell at each other in the yard. The children that were home followed the argument into the yard and were yelling as well. Neal succeeded in getting his keys back and the argument went back inside the house. At this time Neal and Maricela were continuing to yell at each other in their bedroom. The children were still hysterical and crying.

At approximately 11:00 p.m. on September 20, 2010, Marion Police Department Officers Tim Pauley and Joel Thomas were dispatched to a reported disturbance in the area of 9th Street and Geneva Street. Upon their arrival in the area, they could detect no sign of a disturbance. Officer Pauley was flagged down by Mrs. Jenny McMahan who identified herself as the caller reporting the disturbance. She reported that she had heard screaming and crying coming from 817 S. Geneva Street. Officer Pauley radioed the location of the disturbance to Officer Thomas.

When the officers arrived at the location, they made contact with Christina Morgan who had arrived a few seconds after the officers. As the two officers and Morgan approached the

residence, Thomas advised Morgan that they were there to investigate a reported disturbance and that she should stay back until they made sure that the area was safe. Morgan replied that this was her sister's residence and that she could talk to her sister to insure her cooperation. Thomas again advised her that she should stay back. As the officers approached the residence, both could hear yelling and screaming coming from the residence.

When Morgan reached the residence she opened the door. The officers could hear the screaming and yelling more clearly as well as the frantic or hysterical crying of children. Morgan entered and attempted to shut the door on the police officers. Thomas pushed the door open. The officers observed a kitchen with an ironing board knocked over and some children who were the source of the crying. The yelling and screaming seemed to be coming from behind a closed door. Thomas approached the door, but Morgan attempted to block his access. Thomas put Morgan to the side and knocked on the door announcing their presence. Neal and Maricela were inside the room.

Neal appeared to be sweating and breathing heavily. He was wearing UFC mixed martial arts boxing gloves. Maricela was crying and also sweating and breathing heavily. Her left eye was bruised and swollen. There were abrasions and other signs of redness on her chest and her shoulders and upper arms appeared to have signs of bruising present. The injuries appeared to be fresh. Neal advised the officers that nothing was going on and that they should leave. Neal was requested to step outside the residence to speak with Officer Pauley.

Officer Thomas requested Morgan to leave the room so that he might speak with Maricela . Morgan began to yell and curse, stating that since it was her sister she had a right to be present. Thomas again ordered her from the room, threatening her with arrest should she

continue to interfere. As Morgan left the room Maricela began yelling "Get out of my house. Nothing happened. You have no right to be here." Thomas explained that they had reason to believe that a domestic battery had occurred and that they had an obligation to investigate.

Outside the residence, Neal explained to Officer Pauley that he and Maricela had had an argument. Pauley asked if the argument had gotten physical and Neal replied "not really." During their conversation Officer Pauley believed that Neal seemed to be moving toward the door, either in an attempt to communicate with Maricela or to go back into the house. Officer Pauley advised him more than once that he would consider any further attempts to go back into the house to be resisting arrest. Officer Thomas also noticed Neal's attempts to approach the door and heard Officer Pauley's warnings to him. At Neal's next attempt to approach the door Officer Thomas stepped outside to block his way. Officer Pauley advised Neal that he was under arrest for resisting. Neal resisted the officer's attempts to handcuff him. A brief struggle resulted which involved taking Neal to the ground and the use of a taser to achieve Neal's compliance with the officers' orders. Neal was arrested for resisting law enforcement and domestic battery.

As officer Thomas was assisting in the arrest of Neal, he noticed Morgan and Maricela attempting to close the door. He pushed the door open again. Morgan stepped into the doorway, extending her arms and bracing herself against the doorframe. Thomas gave her a final warning about interfering with the investigation and threatened her with arrest for resisting. When Morgan refused to move, Thomas grabbed her wrist and pulled her outside to be handcuffed and arrested her for resisting law enforcement.

While he was in the process of arresting Morgan, Officer Thomas saw Maricela again attempting to close the door. Officer Thomas stuck his foot in the door to prevent her from doing

so. By this time Captain Scott and Officer Richards arrived on the scene. Captain Scott took over the task of attempting to interview Maricela.

Neal has a different version of what transpired outside. He states that he was asked to go outside and speak with an officer and he did so. According to Neal, there were three officers present at that time, one inside with Maricela, one standing at the door and one speaking to him. He thought about going back inside but an officer told him not to do so, so he didn't. According to Neal, even though there was already a police officer inside the residence, the officer at the door asked him for permission to go inside but Neal said "No". He also told Morgan not to let the officers inside. At that time the officers got mad, took Neal to the ground, used a stun gun and arrested him.

In support of their motion, the defendants first assert that they are entitled to summary judgment on the Fourth Amendment warrantless entry claim. Warrantless searches of areas entitled to protection under the Fourth Amendment are presumably unreasonable, but police may overcome this presumption by demonstrating that, from the perspective of the police officer at the scene, a reasonable officer would believe that exigent circumstances existed and that there was no time to obtain a warrant. *United States v. Huddleston*, 493 F.3d 596, 600 (7th Cir. 2010). For example, exigent circumstances exist when officers must "'render emergency assistance to an injured [person] or to protect a [person] from imminent injury.'" *Kentucky v. King*, ___ U.S. ___ 131 S.Ct. 1849, 1856, 179 L.Ed.2d 865 (2011) quoting *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). The Seventh Circuit has found that exigent circumstances justified a warrantless search where the police reasonably feared for the safety of someone inside the premises. *United States v. Richardson*, 208 F.3d 626, 629 (7th Cir. 2000). The test is an

objective one: "'The government must establish that the circumstances as they appeared at the moment of entry would lead a reasonable, experienced law enforcement officer to believe that someone inside the house, apartment, or hotel room required immediate assistance.'" *Id*., quoting *United States v. Arch*, 7 F.3d 1300, 1304 (7th Cir. 1993). "However '[t]his probable cause requirement must be applied by reference to the circumstances then confronting the officer including the need for a prompt assessment of sometimes ambiguous information concerning potentially serious consequences.'" *Tierney v. Davison*, 133 F.3d 189, 196-97 (2d. Cir. 1998) quoting 3 Wayne LaFave Search and Seizure, §6.6(a) at 391 (3rd Ed. 1996).

"Evidence of extreme danger in the form of shots fired, screaming or blood is not required for there to be some reason to believe that a safety risk exists." *Fletcher v. Town of Clinton*, 196 F.3d 41, 49 (1st Cir. 1999). *See United States v. Brown*, 64 F.3d 1083, 1086 (7th Cir. 1995) ("We do not think that the police must stand outside an apartment despite legitimate concerns about the welfare of the occupant, unless they can hear screams. Doubtless outcries would justify entry, but they are not essential.").

"Courts have recognized the combustible nature of domestic disputes, and have accorded great latitude to an officer's belief that warrantless entry was justified by exigent circumstances when the officer had substantial reason to believe that one of the parties to the dispute was in danger." *Tierney v. Davidson, supra*, 133 F.3d at 197.

> On the spot reasonable judgments by officers about risks and dangers are protected. Deference to those judgments may be particularly warranted in domestic disputes. In those disputes, violence may be lurking and explode with little warning. Domestic violence victims may be intimidated or suffer from a dependence inherent in the abusive relationship. The signs of danger may be masked." *Fletcher, supra*, 196 F.3d at 50.

In the present case, Officers Thomas and Pauley were dispatched on a call concerning a disturbance. The caller met Officer Pauley, identified herself and related a story of screaming and crying coming from the residence in question. As the officers approached the house, they could hear the yelling and screaming themselves. When Morgan opened the door, the yelling and screaming was more pronounced, and involved a male and female. The officers could also hear children frantically crying. In addition, there was the circumstance that, for some reason, Morgan did not want the officers to investigate. There were clearly grounds for a reasonable, experienced officer to believe that, in the midst of an ongoing domestic dispute of the sort that was apparently taking place, one of the parties might already be injured or, at the very least, in imminent danger of an injury.

The defendants point out that other courts have found warrantless entry into residences under similar circumstances to be proper under the exigent circumstances exception to the warrant requirement. For example, in *Magnison v. Cossarella*, 813 Fed. Supp. 1321 (N.D. Ill. 1992), police were called to the site of a domestic disturbance by a neighbor who heard screams and was concerned that an infant was in the house. When police arrived, the neighbor reported the screaming and the police officer could hear it himself. The court found that an unannounced warrantless entry into the house was justified by exigent circumstances.

> [The officer] arrived at the … home in response to a call from a neighbor who reported a domestic disturbance in progress. [ The officer] himself heard screams coming from the … home, and was informed at the scene by the neighbor that an infant was involved. There is no question that a reasonable police officer faced with the situation encountered by [this officer] would believe that entry into the home was necessary to protect the safety of others. Indeed, as noted by [the officer] "[ t]his type of situation has the possibility of an explosive and sudden eruption of violence"….

*Id*. at 1323.

7

In *Leonelli v. City of Kendallville*, 2008 WL 3874701 at *9 (N.D. Ind., August 15, 2008), the police officer was dispatched to a domestic disturbance where clothing was burning on the lawn. When he arrived at the scene, the officer saw a fire on the lawn and was advised by a neighbor that there was another domestic fight occurring at the residence. When the officer approached a male subject to make inquiries the subject refused to talk and retreated into the house. This court found that, under the circumstances, a warrantless entry to investigate was justified under the exigent circumstances exception to the warrant requirement.

In *Tierney v. Davison*, *supra*, police were dispatched to a domestic disturbance. On the scene, police were advised by a neighbor that shouting had ceased immediately prior to their arrival. A broken window was observed. The Second Circuit found that, under these circumstances, a warrantless entry was justified. *Id*. 133 F.3d at 197. *See also United States v. Lawrence*, 236 F.Supp.2d 953, 961-62 (D. Neb 2002).

In the present case the defendants contend that, considering the report of the neighbor, the continued screaming and yelling, the hysterical crying of the children and Morgan's action, the officers had reason to believe that someone inside the house was in need of aid and that there was not sufficient time to obtain a warrant.

Neal has put forth a very weak response. Neal focuses on what the officers did or did not observe as they approached the residence. Neal points out that the officers did not see anything unusual outside the residence and did not see a child in danger or anyone fighting. Neal claims that the facts are unclear as to where the officers were when they heard the children crying and the adults arguing. Neal asserts that this is a genuine dispute that prevents a grant of summary judgment. However, both officers have clearly testified in their affidavits that as they

approached the residence, they could hear yelling and screaming coming from inside. (Thomas Aff. 4; Pauley Aff. 5). When Morgan opened the door to the residence, they could hear the screaming and yelling more clearly as well as children crying hysterically. (Pauley Aff. 6; Thomas Aff. 4). Neal acknowledges that the yelling was taking place and that the children were hysterical and crying. (Neal Dep. 33, 35).

Neal argues that the officers "were not clear in their testimony at the suppression hearing on what they observed and heard before entry and after entry into the Neal residence" and that the testimony at the suppression hearing is "inconclusive". Neal implies that the officers testimony at the suppression hearing contradicts their testimony in their affidavits, yet he does not point to any specific inconsistency or contradiction. This court finds that the facts as to what the officers heard in approaching the house and as to what they heard when the door was opened, as stated in their affidavits, are clear and undisputed.

Neal also argues that the testimony of Morgan regarding her intent creates an issue of fact. Neal contends that Morgan's deposition testimony stating that she was attempting to aid the officers in entering the residence to attempt to obtain her sister's cooperation creates an issue of fact as to her conduct. Clearly, however, a police officer can only observe the conduct of an individual, not read their mind. The officers state that Morgan attempted to shut the door and that they forced it open in order to see the situation. Whether Morgan attempted to shut the door with the best of intentions or not, the officers could clearly perceive the act as an attempt to prevent their investigation. In any event, even without Morgan's conduct, the remaining undisputed facts concerning the circumstances facing the officers provided sufficient grounds to believe that immediate entry was necessary.

In conclusion, considering the nature of the call, the screaming and yelling of adults and the hysterical crying of the children, the defendant officers had a reasonable belief that immediate entry into the residence was justified. *Tierney v. Davidson*, 133 F. 3d 189, 196-97 (2nd Cir. 1998); *Magnison v. Cassarella*, 813 F. Supp. 1321 (N.D. Ill. 1992). Thus, summary judgment will be granted to the defendants on the warrantless entry claim.

Next, the defendants seek summary judgment on Neal's Fourth Amendment false arrest claim. Neal was arrested for domestic battery and resisting arrest. In order to succeed on any claim for false arrest brought pursuant to § 1983, Neal has to prove that he was arrested without probable cause. *Booker v. Ward*, 94 F.3d 1052, 1057 (7th Cir. 1996). The existence of probable cause is an absolute defense to any claim under § 1983 against police officers for wrongful arrest, false imprisonment or malicious prosecution. *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006). This is true even if the officers allegedly acted upon a malicious motive. *Id*.

Police officers have probable cause to arrest a person when '"the facts and circumstances within their knowledge and of which they have reasonably trustworthy information are sufficient to warrant a prudent person in believing that the suspect had committed' an offense." *Id*., quoting *Kelley v. Myler*, 149 F.3d 641, 646 (7th Cir. 1998). "Probable cause is itself a 'common sense determination' measured under a reasonableness standard.'" *Spiegel v. Cortese*, 196 F.3d 717, 723 (7th Cir. 1999), quoting *Tangell v. Stuckey*, 135 F.3d 510, 519 (7th Cir. 1998). Probable cause is only a probability or a substantial chance of criminal activity, not a certainty that a crime was committed. *Beauchamp v. Noblesville*, 320 F.3d 733, 743 (7th Cir. 2003). A finding of probable cause does not require evidence sufficient to support a conviction or even evidence demonstrating that it is more likely than not that the suspect committed a crime. *United States v.*

*Funches*, 327 F.3d 582, 586 (7th Cir. 2003). Probable cause requires no more than a reasonable chance – less than a 50 percent likelihood can be sufficient – that a crime occurred and the suspect committed it. *Nelson v. Village of Lisle*, 437 Fed. Appx. 490, 493 (7th Cir. 2011).

Indiana Code §35-42-2-1 defines battery as the knowing or intentional touching of another person in a rude, insolent or angry manner. The crime of domestic battery is defined in Indiana Code §35-42-2-1.3. That statute basically provides that a person who knowingly or intentionally touches an individual who is: 1) a spouse; 2) living with the person as a spouse; or 3) has a child common with the person, in a rude, insolent or angry manner, resulting in bodily injury, commits domestic battery.

In the present case, it is undisputed that Maricela Guerrero had been battered. The bloody, red, swollen left eye, the red marks and abrasions on the chest and the bruising on the shoulders and upper arms indicated that such was the case. The injuries appeared fresh to the officers. When the officers came upon the scene, Maricela was involved in a very loud argument with Neal during which they were both yelling and screaming. Maricela was crying, sweating and breathing heavily. Neal was also sweating and appeared to be breathing heavily. The children in the house were crying hysterically. Both Neal and Morgan appeared to be attempting to prevent the officers from speaking with Maricela alone. The defendants argue that given the facts and circumstances known to the officers, they could reasonably believe that Neal was the person who committed the battery. *Thacker v. City of Columbus*, 328 F.3d 244, 257 (6th Cir. 2003) (even without statement of victim, officers had probable cause for domestic battery arrest based on argument, broken bottle, disarray and bruises on victim).

The defendants state that considering the turmoil Officer Thomas faced in dealing with

Morgan and Maricela inside the house, it is unclear whether Maricela told him that the injuries were received at a party or whether that statement was made later to Captain Scott. The defendants contend that even if that statement had been made to Thomas, under the circumstances, he was entirely justified in disbelieving it or disregarding it. *See United States v. Bartello*, 71 F.3d 436, 438 (1st Cir. 1995) (noting that officers are often trained not to take statements of abuse victims at face value, but instead to consider whether the victim is acting out of fear); *United States v. Lawrence*, *supra*, 236 F.Supp.2d at 963-64 ("Even when the possible victim of domestic abuse assures the officer that she is in no danger, an officer is not required to take her statement at face value in assessing the threat of physical harm.").

With respect to the resisting arrest charge, Indiana Code § 35-44-3-3 provides, in relevant part:

> (a) A person who knowingly or intentionally:
>
>> (1) forcibly resists, obstructs or interferes with a law enforcement officer or a person assisting the officer while the officer is lawfully engaged in the execution of the officer's duties;
>>
>> (2) forcibly resists, obstructs or interferes with the authorized service or execution of a civil or criminal process on order of a court; or
>>
>> (3) flees from a law enforcement officer after the officer has, by visible or audible means, including operation of the law enforcement officer's siren or emergency lights, identified himself or herself and ordered the person to stop;
>
> Commits resisting law enforcement, a Class A misdemeanor, except as provided in subsection (b).

*Wellman v. State*, 703 N.E.2d 1061 (Ind. Ct. App. 1998), involved a man who was convicted of two counts of resisting arrest. Wellman was standing on the front porch of his home

speaking with an officer of Family and Children Services and a member of the county sheriff's department about a report of child abuse. At some point, Wellman advised the two officers that he was going back into his house. The sheriff's officer told Wellman not to do so. Despite this order, Wellman went back inside his house and shut and locked the door. *Id* at 1062. These facts formed the basis for a conviction of resisting law enforcement by fleeing. *Id*. On appeal, Wellman contended that merely walking into his house did not constitute "fleeing" within the meaning of the statute. Wellman argued that "fleeing" had to involve running or moving swiftly or intentionally secreting or concealing oneself. The Court of Appeals rejected this interpretation, finding that the statute did not require any of these activities. It concluded that "flight" should be understood to mean a knowing attempt to escape law enforcement when the defendant is aware that a law enforcement officer has ordered him to stop or remain in place once there. *Id*. at 1063. The court found that disobeying the command to remain by walking away from the officer into his house and locking the door behind him was sufficient evidence to support the conviction on the charge of resisting law enforcement. *Id*.

In *Leonelli v. City of Kendallville*, 2008 WL 3874701 (N.D. Ind. 2008), plaintiff brought an action under 42 U.S.C. § 1983 alleging that police officers had violated his Fourth Amendment rights by falsely arresting him. The police officers had been called to plaintiff's residence on a report of a domestic disturbance. Plaintiff was standing on his front porch when the officers arrived. An officer, wearing a full police uniform instructed plaintiff to come and talk to him. Instead, plaintiff turned away and walked into his house. The officer followed plaintiff into the house, escorted him back out and handcuffed him. *Id*. at 3. This court found that based on *Wellman, supra*, and *Tawdul v. State*, 720 N.E.2d 1211 (Ind. Ct. App. 1999), the

plaintiff's failure to comply with the officer's order to come and talk to him and instead turning and walking away provided probable cause for the arrest of plaintiff for fleeing police. *Id*. at *6. *See also Jenkins v. City of Lawrence*, 2011 WL 2670830 at *6 (S.D. Ind. 2011) (stepping back from an advancing officer provided probable cause for arrest); *J.S. v. State*, 843 N.E.2d 1013, 1017 (Ind. Ct. App. 2006) (flailing arms, jerking away or pulling away from officer sufficient to support resisting conviction).

In the present case, Neal was requested to step outside the residence so that both participants in the argument could be interviewed separately. This is an entirely appropriate technique when officers are dealing with a domestic dispute. *Hanson v. Dane County*, 599 F.Supp.2d 1046, 1056 (W.D. Wisc., 2009). Both Officer Pauley and Officer Thomas perceived Neal's conduct as an attempt to get back inside

Neal admits that he thought about returning to the house, but denies that he took any steps to do so after being ordered to remain outside. Rather Neal claims that, despite a police officer already being inside the house, another police officer requested permission of him to enter the house. Neal refused the permission. Instead, he instructed Morgan not to let the officer into the house. He states that as a result of his instruction, Morgan blocked the door, preventing the officer from entering. Morgan was subsequently arrested for resisting law enforcement due to her efforts to block the door and prevent Officer Thomas from entering (Thomas Aff., ¶11).

Indiana Code §35-41-2-4 provides:

Sec. 4. A person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense, even if the other person:
  (1) has not been prosecuted for the offense;
  (2) has not been convicted of the offense; or
  (3) has been acquitted of the offense.

By inducing or causing Morgan to resist law enforcement, i.e., forcibly obstructing or interfering with a law enforcement officer while the officer is lawfully engaged in the execution of his duties, Neal himself, by his own admission, was also guilty of resisting. Thus, even under Neal's version of events, the police officers had probable cause to arrest him for resisting law enforcement.

Neal, however asserts that officers responding to domestic violence calls are required to follow a Marion Police Department policy, Policy on Domestic Violence, No. 6.02. Neal claims that pursuant to this Policy, a suspect is identified based on the probable cause formula outlined in the Policy which directs the officer to only look to particular forms of evidence, not to all evidence available at the time. Neal further claims that the policy directs the officer to find a contrary victim as not credible, which led the officers in the present case to ignore Maricela's assertion that she was battered at a party and not by Neal.

Clearly, however, there is nothing in the Policy on Domestic Violence that authorizes or encourages arrests on anything less than probable cause. The Policy simply provides that an officer should make an arrest when "reasonable grounds" exist. Reasonable grounds is defined as "a combination of trustworthy information and facts, when viewed through the eyes of a police officer, sufficient to warrant a person of reasonable caution to believe that a crime or violation of a protective order or consent agreement has been or is being committed." The Policy also contains a non-exclusive list of examples of when the evidence provides probable cause. The Policy further provides that where reasonable grounds exist, arrest is the preferred cause of action where the probable cause relates to the crime of battery. Further, arrest is mandatory where probable cause exists for felony battery or where one of the participants is

determined to be the "primary physical aggressor".

Although Neal contends that the Policy directs an officer to find a contrary victim as not credible, it is clear that Neal misreads the Policy. Procedure Section F of the Policy provides factors which are not to be considered by an officer when probable cause for an arrest exists. Among those factors are the reluctance or refusal of a victim to press charges (Section F(1)), doubt that the victim will follow through on charges (Section F(8)) and doubt that the arrest will lead to a conviction (Section F(9)). The Policy does not direct an officer to find a victim to be "not credible" nor is witness credibility even mentioned in the Policy.

Neal also contends that the Policy provides that "[t]he determination not to arrest requires a special report explaining the reasons." However, Procedure Section D of the Policy requires a written report only in instances where probable cause exists but no arrest is made and requires the officer to explain the reason for not making an arrest despite the existence of probable cause. A report is not required if there was no probable cause for an arrest.

As discussed above, it is undisputed that Maricela Guerrero had been battered. She had a bloody, red swollen left eye, red marks and abrasions on the chest and bruising on her shoulders and upper arms. The injuries appeared very fresh to the officers. When the officers arrived at the residence, Maricela was involved in a very loud argument with Neal during which they were both yelling and screaming. The argument had been severe enough to alert the neighbors and had been going on for some time given that a 911 call was made and police responded after having trouble locating the source of the disturbance. Maricela was crying, sweating and breathing heavily. Neal was also sweating and appeared to be breathing heavily. The children in the house were crying hysterically. Clearly, under the facts and circumstances known to the

officers, they could reasonably believe that Neal was the person who committed the battery and the officers had probable cause to arrest Neal for domestic battery.

In his deposition, Neal admitted that he had instructed Morgan to prevent the officers who had requested permission to enter the residence from entering the residence. Morgan responded by physically attempting to keep the police officer outside so he would be unable to support the officer inside the house. Morgan was arrested for interfering with a police officer. Neal now contends that there is an issue of fact on the question of whether the officer had probable cause to arrest him for aiding, inducing or causing Morgan to interfere with the officers. Morgan states that the order to prevent the entry of the officers came from Neal while he was inside the house, not when he was outside. However, this question of fact is not material. Whether Neal was inside or outside when he instructed Morgan to interfere with the officers, it is undisputed that he did so and that as a result, Morgan did interfere with the police while they were lawfully engaged in their duties. There was probable cause to arrest Neal for inducing or causing Morgan to commit the offense of interfering with police officers under Ind. Code §§ 35-44-3-3(a)(1) and 35 41-2-4. Thus, the defendants are entitled to summary judgment on the claim of false arrest in violation of the Fourth amendment.

Next, the defendants argue that, in any event, they are both entitled to qualified immunity. Governmental officials are shielded from liability if their conduct does not violate the clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Qualified immunity allows government officials to perform their discretionary functions without fear of potential liability. *Elwell v. Dobucki*, 224 F.3d 638, 640 (7th Cir. 2000). A right is

"clearly established" for qualified immunity purposes, only where the contours of the right are sufficiently clear that a reasonable official will understand that what he is doing violates the right, and in light of pre-existing law, the unlawfulness of the act is apparent. *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). Qualified immunity shields government employees from civil liability as long as their actions could reasonably have been thought to be consistent with the rights they are alleged to have violated. *Leaf v. Shelnutt*, 400 F.3d 1070, 1080 (7th Cir. 2005). When qualified immunity applies, a defendant is not merely entitled to a defense from liability; he is entitled to not stand trial. *Id*.

In *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001), the Court established a two-step inquiry to assess the objective reasonableness of an official's conduct, as measured by reference to clearly established law. Under the *Saucier* methodology, the court first inquires whether, taken in the light most favorable to the plaintiff, the facts show the defendant's conduct violated a constitutional right. *Id.* If no constitutional right would have been violated on the facts alleged, there is no need for further inquiry. *Id*. If, however, the alleged conduct of the governmental official violated the constitutional right, the next step is to ask whether the right was clearly established. *Id*. The *Saucier* methodology is no longer required and courts are free to address either prong of the qualified immunity analysis first in light of the circumstances in the particular case. *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). Although the *Saucier* methodology is no longer mandatory, the Supreme Court has recognized that it may be beneficial in some cases. *Id*.

Under the *Saucier* methodology, if the facts make out a constitutional violation, then the court must determine "whether the right was clearly established." *Saucier*, 533 U.S. at 201;

*Hildebrandt v. Illinois Dept. of Natural Resources*, 347 F.3d 1014, 1036 (7th Cir. 2003). This inquiry is a specific one which asks whether it would be clear to a reasonable official that his conduct was unlawful in the situation he confronted. *Leaf*, 400 F.3d at 1080. The right is clearly established when the contours of the right are sufficiently clear that a reasonable officer would understand that what he is doing violates the right. *Id.* The action's unlawfulness must be "apparent" from pre-existing law. *Id.* Conversely, the defendant is immune from suit if the conduct at issue did not violate a right that was clearly established when the conduct occurred, so that the defendant would not have been on notice that his behavior was "probably unlawful." *Montville v. Lewis*, 87 F.3d 900, 902-03 (7th Cir. 1996), quoting *Sherman v. Four County Counseling Center*, 987 F.2d 397, 401 (7th Cir. 1993).

The plaintiff bears the burden of overcoming a defendant's assertion of qualified immunity and the plaintiff is required to show that the right in question was clearly established at the time the alleged violation occurred. *Kiddy-Brown v. Blagojevich*, 408 F.3d 346, 359 (7th Cir. 2005); *Kernats v. O'Sullivan*, 35 F.3d 1171, 1176 (7th Cir. 1994). To show this, the plaintiff may point to closely analogous cases which establish that the conduct was unlawful, or demonstrate that the violation was so obvious that a reasonable state actor would know that what he is doing violates the Constitution. *Morrell v. Mock*, 270 F.3d 1090, 1100 (7th Cir. 2001)*; Forman v. Richmond Police Dept.*, 104 F.3d 950, 958 (7th Cir. 1997).

For qualified immunity to be surrendered, pre-existing law must dictate and truly compel the conclusion for every like situated reasonable government agent, that what he is doing violates federal law under the circumstances. *Khuans v. School Dist. 110*, 123 F.3d 1010, 1019-20 (7th Cir. 1997). In determining whether a right is clearly established, the court first looks to

controlling United States Supreme Court and Seventh Circuit precedent. *Denius v. Dunlap*, 209 F.3d 944, 950 (7th Cir. 2000). In the absence of such controlling precedent, the court considers all relevant case law to determine whether it can be said with assurance that the recognition of the right by controlling precedent was merely a question of time. *Id* at 951. A split among circuits regarding the constitutionality of conduct analogous to the conduct in question is an indication that the right was not clearly established at the time of the alleged violation. *Id*. Only in rare cases, where constitutional violations are patently obvious, is the plaintiff not required to present the court with analogous case law. *Id*.

In respect to the warrantless entry in the house during the course of an ongoing domestic dispute, the cases cited above, including *Tierney*, *supra*; *Fletcher*, *supra*; *Magnison*, *supra*; and *Leonelli*, *supra*, would indicate that a reasonable officer in the position of Thomas or Pauley would not be aware that their conduct was clearly unconstitutional.

> The balanced choice the officers must make is protected by qualified immunity if it is an objectively reasonable one. The officers here chose not to seek a warrant, which inevitably would have caused delay. If their choice not to delay but to enter Fletcher's home was an objectively reasonable one, then the officers receive the protection of qualified immunity. Such immunity is given not only for the protection of the officers, but also to protect victims of crime. In the domestic violence context, immunity is given so that officers will not have strong incentives to do nothing when they believe a domestic abuse victim is in danger. Permitting suit against officers who have acted reasonably when there is reason to fear would create exactly the wrong incentives.

*Fletcher, supra*, 196 F.3d at 50-51.

Neal asserts that the issue of qualified immunity is "not ripe" for ruling, arguing that the "facts surrounding the entry are unclear....".  However, the record shows that the facts

surrounding the entry into the residence are clearly set forth in the affidavits of defendants Thomas and Pauley, including the call to a disturbance, the meeting with the caller and the information obtained from her, and the yelling and screaming of persons engaged in a serious argument as well as the hysterical crying of children, heard both outside the residence and when Morgan opened the door.

Notably, Neal has not cited any cases in which police officers in situations similar to the one presently before the court were found to have acted unconstitutionally. Neal bears the burden of demonstrating that the law was clearly established at the time the alleged violation occurred. This can be done by citing closely analogous cases which establish that the conduct was unlawful or by demonstrating that the violation was so obvious that a reasonable state actor would know he was violating the Constitution. *Morrel v. Mock*, 270 F.3d 1090, 1100 (7th Cir. 2001). Neal has not met his burden and defendants Thomas and Pauley are entitled to qualified immunity on the warrantless entry claim.

With respect to the false arrest claim, the officers are entitled to qualified immunity if a reasonable officer could have mistakenly believed that probable cause existed for the arrest. *Humphrey v. Staszak*, 148 F.3d 719, 725 (9th Cir. 1998); *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). The relevant inquiry is whether a reasonable officer in the same circumstances and the same knowledge could have reasonably believed that probable cause existed in light of well established law. *Carmichael v. Vill. Of Palatine, Ill.*, 605 F.3d 451, 459 (7th Cir. 2010).

In the present case, considering the undisputed appearance of Maricela, it would be clear to any observer that she had recently suffered a battery. The only question was who was the mostly likely assailant. The officers had information of an ongoing incident involving yelling

and screaming at the residence. Upon their arrival, they witnessed the yelling and screaming and also witnessed the hysterical crying of the children in the residence. There also seemed to be a reluctance on the part of Neal and Morgan to permit the officers to speak with Maricela. Under the circumstances a reasonable officer would conclude that Neal, the other participant to the argument, was the most likely assailant.

Neal has taken the position that the officers should have believed Maricela when she informed them she received her injuries elsewhere. Neal also asserts that the officers may have been under the impression that the domestic violence Policy required them to make an arrest, even without probable cause. As explained above, there is nothing in the Policy indicating that an arrest should ever be made without adequate probable cause. With respect to Maricela's statements, as noted above, the defendants have cited to several cases where courts have expressed the opinion that statements by domestic abuse victims need not be taken at face value. Again, Neal has not cited to any closely analogous caselaw demonstrating that the defendants' conduct was clearly unlawful. Thus, the defendants are also entitled to qualified immunity on the false arrest claim.

With respect to qualified immunity on the resisting arrest claim, the defendants argue that the holdings in *Wellman* and *Leonelli* support the position that a reasonable officer would believe that probable cause for the resisting charge existed considering Neal's attempts to re-enter the residence despite repeated orders from Pauley to remain outside. Moreover, Neal admits that he instructed Morgan to keep the officer out of the house, which provided probable cause for inducing or causing another to commit an offense, and thereby provided probable cause for the charge of resisting law enforcement. Neal cites to *Price v. State*, 622 N.E. 2d 954 (Ind. 1993),

in support of his position that the law was clearly established that such an arrest would have been unlawful. In *Price*, the Indiana Supreme Court decided that arrests under the state's disorderly conduct statute may not be made based on the content of speech, particularly where the content of the speech was directed at a police officer's conduct. Neal argues that his alleged refusal to consent to a police officer's request to enter his home was clearly not unlawful conduct, but mere comment on police activities. The courts, however, have drawn a distinction between reasonable criticism of police conduct and telling an accomplice to commit a crime. In the present case, probable cause for the arrest was based on Neal's instructions to Morgan to obstruct the police in their legitimate law enforcement activities, not on his refusal to permit entry into his home.

Clearly, Neal's instruction to Morgan was not protected speech. *See e.g., State v. New*, 421 N.E.2d 626, 629 (Ind. 1981); *Cox v. Louisiana*, 379 U.S. 536, 535 (1965); *United States v. Rahman*, 189 F.3d 88, 116 (2nd Cir. 1999) ("Government may criminalize certain preparatory steps toward criminal action, even when the crime consists of conspiratorial or exhortatory words."). Neal has again failed to provide closely analogous caselaw demonstrating that no probable cause existed for his arrest for aiding or inducing Morgan to interfere with the police. Accordingly, this court finds that defendants Pauley and Thomas are entitled to qualified immunity on all claims.

The court will now address Neal's attempt to argue governmental liability. In paragraph 12 of his complaint, Neal makes the following allegations:

> 12.     At all times relevant herein, defendant City maintained a policy of
>          aggressively investigating reports of domestic violence, and as a matter of
>          policy, custom and usage made use of the emergency assistance exception
>          to the search warrant requirement as a justification to gain entry into a

residence without first conducting a thorough investigation or obtaining a warrant for search and seizure.

A governmental entity cannot be held liable under 42 U.S.C. § 1983 under a theory of *respondeat superior*. *Monell v. Dept. of Social Services of the City of New York*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). It is only where the execution of the government's policy or custom, whether made by lawmakers or those whose edicts or acts may fairly be said to represent official policy, inflicts injury that the government, as an entity, is responsible under § 1983. *Id.* Thus in order to bring suit against the City of Marion, Neal must be able to demonstrate that a municipal policy or custom caused the deprivation of his constitutional rights. *Rasche v. Village of Beecher*, 336 F.3d 588, 597 (7th Cir. 2003). Neal must demonstrate that the "requisite culpability (a 'policy or custom' attributable to municipal policymakers) and the requisite causation (the policy or custom was the 'moving force' behind the constitutional deprivation)." *Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir. 2002).

Generally, an unconstitutional policy or custom may take one of three forms: "(1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a 'custom or usage' with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policy making authority." *Rasche*, 336 F.3d at 597-98.

In the present case, Neal alleges that the city has a policy of "aggressively investigating reports of domestic violence." Assuming that this is an express policy of the City of Marion, it does not appear to be one which, when enforced, causes constitutional deprivation. There are no allegations that the policy authorizes illegal or unconstitutional conduct as a part of the

investigation. There are no allegations, for example, that the policy itself authorizes arrest based on anything less than probable cause or that the investigations authorize the violation of any constitutional rights of suspects. Without any indication that an express policy of aggressively investigating reports of domestic violence is the "moving force" behind constitutional violations when it is enforced, this allegation provides no basis for governmental liability under 42 U.S.C. §1983.

The complaint appears to allege a "custom" of utilizing the "emergency assistance exception" to the requirement for warrants, in order to gain entry into a residence "without conducting a thorough investigation or obtaining a warrant." In a certain respect, this allegation appears to be self-contradictory. If the time and opportunity existed to conduct a full investigation and to obtain a search warrant, the exigent circumstances exception would not be applicable. Rather, as noted above, the exception exists for circumstances wherein there is no time to obtain a warrant.

The practice or custom which might form a basis for municipal liability must be a pattern or custom of unconstitutional activity. *Palmer v. Marion County*, 327 F.3d 588, 595-96 (7th Cir. 2003). If the exigent circumstances exception for circumstances wherein there is a reasonable belief that someone inside the residence is in need of assistance, is often relied upon by officers investigating reports of domestic violence, this reliance in and of itself is not unconstitutional. Neal would need to demonstrate a pattern of conduct where the police falsely claim a belief that someone was in need of assistance, thereby bypassing the warrant requirement. Presumably, this would require a series of court rulings of improper search. "[T]here is no clear consensus as to how frequently such conduct must occur to impose *Monell* liability, 'except that it must be more

than one instance,' or even three." *Thomas v. Cook County Sheriff's Department*, 604 F.3d 293, 303 (7th Cir. 2010). *See also Estate of Moreland v. Dieter*, 395 F.3d 747, 760 (7th Cir. 2005) ("[Three] incidents do not amount to a widespread practice that is permanent and well settled so as to constitute an unconstitutional custom or policy about which the sheriff was deliberately indifferent") (quotation marks omitted). In the present case, Neal has not made any showing of a pattern of residential entries by police officers, claiming exigent circumstances, which have been found to be unlawful.

In his response brief, Neal contends that the Policy of the Marion Police Department relating to domestic violence provides a basis for liability of the City of Marion. However, as discussed above, the Policy is not an express policy that, when enforced, causes a constitutional deprivation. Neal contends that the Policy states that arrests for battery are the preferred course of action. However, Neal neglects to note that the Policy expressly provides that an arrest is only to take place if probable cause exists. Clearly, the Policy does not authorize or direct any arrest to be made in the absence of probable cause.

To succeed in establishing governmental liability, Neal "must show a 'direct causal' link between the municipal policy and the constitutional deprivation." *Arlotta v. Bradley Ctr.*, 349 F.3d 517, 522 (7th Cir. 2003). He must show that the policy or custom is the moving force behind any alleged constitutional deprivation. *Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir. 2002). Nothing in the City's Policy on Domestic Violence suggests that officers use unlawful means to enter a residence or use improper criteria in making arrests.

"Where the policy relied upon is not itself unconstitutional, such as here, 'considerably more proof than the single incident will be necessary in every case to establish both the requisite

fault on the part of the municipality, and the causal connection between the "policy" and the constitutional deprivation.'" *Jones v. City of Elkhart*, 2012 WL 5947707 at *13 (N.D. Ind. November 28, 2012) quoting *Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985). *See also Board of County Commissioners v. Brown*, 520 U.S. 397, 405 (1997) ("when a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employees.").

In the case at bar, Neal speculates that the Police Department's domestic violence Policy "encourages officers to violate the Fourth Amendment right to be free from unreasonable entry…" and directs officers to  make arrests without probable cause (Response, p. 11). *Cf. Tuttle*, 477 U.S. at 824 n. 8 ("the fact that a municipal 'policy' might lead to 'police misconduct' is hardly sufficient to satisfy Monell's requirement that the particular policy be the 'moving force' behind a constitutional violation."). Again, speculation does not create an issue of fact preventing summary judgment. *Springer, supra*. As demonstrated above, the Policy neither mentions entry into a residence nor authorizes arrest without probable cause. Consequently, to succeed on his claim of municipal liability, Neal must demonstrate that a custom of making unlawful entries into residences and/or making arrests without probable cause in domestic situations has developed and that the policymaker was aware of such custom and, at a minimum, was deliberately indifferent to the consequences. *Gable*, 296 F.3d at 537. A single incident of alleged unconstitutional conduct is insufficient to demonstrate such a custom or to impose liability under *Monell*. *Tuttle*, 471 U.S. at 823-24.

Again, in order to demonstrate a custom of improper entry and/or arrests in domestic

cases without probable cause, Neal would be required to demonstrate a pattern or routine of such violations. *See Thomas v. Cook County Sheriff's Department*, 604 F.3d 293, 303 (7th Cir. 2010) (more than three incidents required to demonstrate custom or practice upon which to base Monell liability); *Estate of Moreland v. Dieter*, 395 F.3d 747, 760 (7th Cir. 2005). Here,  Neal offers no evidence that the City's Domestic Violence Policy has resulted in an unconstitutional practice of unlawfully entering residences or in making arrest in domestic cases without probable cause. *Jones, supra*. Therefore, Neal has failed to make a case for governmental liability based on custom or practice.

In any event, the City's liability in this matter is wholly dependent on a constitutional violation having been committed by one of its officers because, in most cases, the city cannot be found liable if there was no underlying constitutional deprivation by its employees. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Slabenger v. City of Springfield*, 630 F.3d 499, 505 (7th Cir. 2010); *Jenkins v. Bartlett*, 487 F.3d 482, 492 (7th Cir.)(2007). As discussed above, this court has ruled that neither Officer Pauley nor Officer Thomas committed any violation of Neal's constitutional rights and, therefore, there is no basis for liability of the City of Marion and summary judgment will be granted.

## Conclusion

On the basis of the foregoing, defendants' motion for summary judgment [DE 24] is hereby GRANTED.

Entered: June 2, 2014.

s/ William C. Lee
William C. Lee, Judge
United States District Court
